MCCULLOCH KLEINMAN LAW
Kevin P. McCulloch
kevin@mkiplaw.com
Nate A. Kleinman
nate@mkiplaw.com
501 Fifth Avenue, Suite 1809
New York, New York 10017
T: (212) 355-6050
F: (206) 219-6358

*Attorneys for Plaintiff*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LYLE OWERKO,<br><br>*Plaintiff*,<br><br>v.<br><br>ROBERT GLASPER; CONCORD MUSIC GROUP, INC.; BENSUSAN RESTAURANT CORP. (d/b/a BLUE NOTE JAZZ FESTIVAL);<br><br>*Defendants*. | Civil Action No.:<br><br>**COMPLAINT AND**<br>**DEMAND FOR A JURY TRIAL** |

    Plaintiff Lyle Owerko ("Owerko" or "Plaintiff"), by and through undersigned counsel and pursuant to the applicable Federal Rules of Civil Procedure and the Local Rules of this Court, hereby demands a trial by jury of all claims and issues so triable, and for his Complaint against Defendants Robert Glasper; Concord Music Group, Inc.; and Bensusan Restaurant Corp. (d/b/a Blue Note Jazz Festival) (collectively referred to herein as "Defendants"), hereby asserts and alleges as follows:

1

## PARTIES

1. Plaintiff Owerko is a renowned photographer and visual artist who currently resides in the State of California.

2. Plaintiff is the sole author, creator, and registered owner of the copyrights in and to the creative work identified herein and that is the subject of this action.

3. Defendant Robert Glasper ("Glasper") is a highly acclaimed, Grammy Award-winning jazz pianist and recording artist. Upon information and belief, Defendant Glasper is currently a resident of California.

4. Defendant Concord Music Group, Inc. ("Concord") is a Delaware corporation with its headquarters in Nashville, TN.

5. Defendant Concord is registered to do business in New York State, with a registered agent at Corporation Service Company, 80 State Street, Albany, NY 12207.

6. Upon information and belief, Concord also maintains an office in this District at 250 West 57th St., 6th Floor, New York, NY 10107.

7. Upon information and belief, Defendant Concord is the parent company of Loma Vista Recordings, the record label associated with Defendant Glasper.

8. Upon information and belief, Defendants Glasper and/or Concord own and operate, either directly and/or through their agent(s) or subsidiary(ies), multiple commercial websites that promote and advertise Glasper's albums, events, and merchandise, including those located at www.robertglasper.com and www.whothefuckisrobertglasper.info (together, the "Glasper Websites"), through which merchandise and concert tickets can be purchased.

9. Defendant Bensusan Restaurant Corp. ("BRC") is a New York corporation with its registered address located at 131 West 3rd Street, New York, NY, 10012.

10. Upon information and belief, Defendant BRC is the owner and operator of the "Blue Note Jazz Festival" and "Blue Note Jazz Club" entertainment venue, with locations around the world including its flagship location at 131 W. 3rd Street.

11. Upon information and belief Defendant BRC owns and operates several Blue Note-related websites, including www.bluenotejazz.com (the "Blue Note Website") through which it sells merchandise and provides artist/event information.

## JURISDICTION AND VENUE

12. Jurisdiction for Plaintiff's claims lies with the United States District Court for the Southern District of New York pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*, 28 U.S.C. § 1331 (conferring original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States"), and 28 U.S.C. § 1338(a) (conferring original jurisdiction over claims arising under any act of Congress relating to copyrights).

13. Venue is proper in this Court under 28 U.S.C. §§ 1391(b) since a substantial portion of the alleged misconduct by Defendants giving rise to the claims asserted herein occurred in this District and 28 U.S.C. § 1400(a) since Defendants reside or may be found in this District.

14. Upon information and belief, each of the Defendants conducts substantial business in the State of New York and in this District.

15. Upon information and belief, Defendant Glasper regularly travels to and performs in venues located in this District, including the Blue Note Jazz Club.

16. Upon information and belief, Defendant Glasper performed at events or concerts in this District that he and/or Concord promoted using the infringing artwork at issue herein.

17. Upon information and belief, Defendant Glasper displayed and published the infringing artwork at issue herein on screens and sold merchandise that featured the infringing artwork at events or concerts in this District.

18. Upon information and belief, Defendants Glasper and Concord sold concert tickets, albums, and merchandise from the Glasper Websites to customers in this District.

19. Upon information and belief, Defendant Glasper was aware of, participated in, and approved the use of the infringing artwork at issue herein on the Glasper Websites and he directly benefited from the infringements of Plaintiff's copyrights that occurred in this District.

20. The "Website Terms and Conditions of Use" provided on the Glasper Websites provide that any disputes arising therefrom shall be governed by New York law and that users "submit to the personal jurisdiction of the federal and state courts located in New York County, New York for the purposes of litigating any applicable claim."

21. Defendants Concord and BRC are corporate residents of this District and thus subject to general jurisdiction herein.

## GENERAL ALLEGATIONS

22. Plaintiff is a professional photographer and visual artist who makes his living by selling and licensing his creative works.

23. Among other works and collections, Plaintiff is known for his stylized and highly recognizable photographs of boomboxes that he included as part of his book titled *The Boombox Project: the machines, the music, and the urban underground* (ISBN 978-0810982758).

24. Following the success of the *The Boombox Project*, Plaintiff designed and created a series of limited edition, customized three-dimensional boombox sculptures made from a unique blend of fiberglass resin and high gloss automotive paint (the "Boombox Sculptures").

25. One of the Boombox Sculptures was designed in all-black (the "Black Boombox") a copy of which is attached as <u>Exhibit 1</u> and depicted below for ease of reference:



26. In or about November 2024, Plaintiff became aware that a derivative copy of the Black Boombox was being used by Defendants in all manner of advertising materials and merchandise/products to promote Glasper's album titled, "Black Radio III," and the "Black Radio Experience" music festival organized and produced by Defendant BRC.

27. A side-by-side comparison of Plaintiff's work and the version used on one of the Glasper Websites is shown below for ease of reference.



*Plaintiff's Black Boombox*          *Glasper Website Use*

28. Defendants created this digitally altered unauthorized copy of Plaintiff's Black Boombox and used it across their various websites to promote events, album sales, and the work and appearances of Glasper, and did so for the last several years.

29. Among other infringements, Defendants published the unauthorized copy of Plaintiff's Black Boombox to the Glasper Websites and used it as the main header image on the homepages of the Glasper Websites to attract customers and promote Glasper and his work/appearances.

30. Defendants also created and sold various merchandise/products featuring the infringing copy of Plaintiff's Black Boombox, including the "Black Radio Blanket," "Black Tote," and a "Black Radio Experience Dad Hat," as shown below.





31. Defendants Glasper and BRC each posted a copy of the unauthorized and infringing derivative copy of Plaintiff's Black Boombox to their social media accounts, which have many thousands of followers respectively, to promote the Black Radio Music Festival, as shown below.



32. Defendants also used the unauthorized and infringing derivative of Plaintiff's Black Boombox as the header image on the Blue Note Website to promote the 2024 Black Radio

7

Experience music festival, at which Glasper was the "artist in residence" and which included other headlining musicians such as John Legend, Jill Scott, and André 3000.



33.     The Defendants also used their infringing copy of Plaintiff's Black Boombox as the closing image of a video created by Defendant BRC, titled "2024 Black Radio Experience Recap," and published to YouTube (available at https://www.youtube.com/watch?v=7SxYXTXIq8w).



34.     Defendants also published the infringing copy of Plaintiff's Black Boombox as the primary image on another Glasper Websites through which visitors could purchase tickets to Glasper events and buy his albums and merchandise (including the infringing merchandise described above), as shown below.

8



35.     Defendant Glasper also displayed the illegal copy of Plaintiff's Black Boombox as the stage backdrop during certain concerts and events, as shown in the social media post below.



36.     Defendant Glasper also published the same unauthorized derivative copy of Plaintiff's Black Boombox on the music streaming platform Spotify, as the header image for the "Robert Glasper's Black Radio Experience Playlist," as shown below.

9



37. Larger copies of each of these examples as well as other uses by Defendants are attached hereto as Exhibit 2.

38. None of the Defendants ever sought or obtained permission from Plaintiff to incorporate or use the Black Boombox work in any manner.

39. The full scope of Defendants' uses of the Black Boombox is not yet known by Plaintiff, as that information remains in their sole possession, and thus the uses included in Exhibit 2 are not intended to be exhaustive.

## COUNT I
## COPYRIGHT INFRINGEMENT
## (DIRECT AND/OR VICARIOUS)

40. Plaintiff repeats and re-alleges each allegation set forth in the paragraphs above as if set forth fully herein.

41. Plaintiff has registered his copyrights in the Black Boombox under Registration No. VAu 1-429-744 (titled "Black Boombox v.001," effective April 21, 2021).

42. Upon information and belief, Plaintiff registered his copyrights in the Black Boombox work prior to the commencement of Defendants' infringements.

43. Plaintiff also previously registered the computer-aided design for his boombox sculptural works (titled "Boombox Project Sculpture CAD drawing") in 2015 under VAu 1-224-625 (effective August 10, 2015) and his original boombox sculpture (titled "Owerko Boombox Sculpture") in 2015 under VAu 1-224-567 (effective August 3, 2015).

44. Upon information and belief, Plaintiff registered his copyrights in Boombox Project Sculpture CAD drawing and Owerko Boombox Sculpture prior to the commencement of Defendants' infringements.

45. As alleged herein, Defendants each copied, published, distributed, displayed, and otherwise exploited Plaintiff's Black Boombox work in various media without Plaintiff's permission or a valid license to do so.

46. Upon information and belief, Defendants Glasper and Concord had the right and ability to control the material published on the Glasper Websites, in merchandise/products, and related promotional/advertising materials published by BRC, and received direct financial benefits therefrom.

*Willfulness*

47. Upon information and belief, Defendants either knew or had reason to know that their extensive uses of Plaintiff's Black Boombox were not authorized by Plaintiff or validly licensed, including because they are sophisticated media companies and a professional musician that regularly deal with copyright/licensing issues, and because they never sought or inquired about the ownership/license status for such work.

48. Further, at least one of the uses of Plaintiff's Black Boombox remains displayed on one of the Glasper Websites (located at www.whothefuckisrobertglasper.info), even after

Plaintiff's counsel sent notice to Glasper's agent and communicated with Defendant Concord's in-house counsel.

49. At the very least, Defendants' conduct constitutes reckless disregard of Plaintiff's copyrights.

***Causal Nexus to Profits***

50. As alleged herein, Defendants each misappropriated Plaintiff's intellectual property for their own profit, causing Plaintiff significant injuries, damages, and losses in amounts to be determined at trial.

51. Defendants have financially benefitted from the unauthorized use of Plaintiff's creative work, both through the direct sale of merchandise featuring the work as well as through promotional/advertising materials that generated ticket sales.

52. Defendant BRC used an unauthorized copy of Plaintiff's Black Boombox on social media and on the Blue Note Website to promote/advertise the Black Radio Experience music festival, which in turn drove ticket sales to the festival.

53. Upon information and belief, Defendants' extensive and consistent use of Plaintiff's Black Boombox work, as the literal and iconographic representation of a "Black Radio" to promote the Black Radio III album and Black Radio Experience music festival, effectively established a brand identity akin to a corporate logo or trademark.

54. Upon information and belief, the cumulative effect of Defendants' use of Plaintiff's work as a visual brand identity generated ill-gotten revenues beyond the direct sale of infringing merchandise and music festival tickets.

55. Plaintiff seeks all damages recoverable under the Copyright Act, including statutory or actual damages, including Defendants' profits attributable to the infringing uses of

Plaintiff's creative work, and the damages suffered as a result of the lack of compensation, credit, and attribution.

**WHEREFORE,** Plaintiff respectfully prays for judgment on his behalf and for the following relief:

1.  A preliminary and permanent injunction against Defendants from copying, displaying, distributing, advertising, promoting, and/or selling the infringing materials identified herein, and requiring Defendants to deliver to the Court for destruction or other appropriate disposition all relevant materials, including digital files of Plaintiff's work and all copies of the infringing materials described in this complaint that are in the control or possession or custody of Defendants;

2.  All allowable damages under Section 504 of the Copyright Act, including, but not limited to statutory or actual damages, including damages incurred as a result of Plaintiff's loss of licensing revenue, damage to the value of the copyrighted works, and Defendants' profits attributable to the infringement;

3.  Plaintiff's recoverable costs and attorneys' fees incurred in pursuing and litigating this matter, as authorized by Section 505 of the Copyright Act;

4.  For such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Dated:  April 24, 2025

                                             Respectfully submitted,

                                             */s/ Kevin McCulloch*
                                                Kevin P. McCulloch
                                                Nate A. Kleinman
                                            McCulloch Kleinman Law
                                            501 Fifth Avenue, Suite 1809
                                            New York, New York 10017
                                            T: (212) 355-6050
                                            F: (206) 219-6358